Thank you. Good morning, Your Honor. Steve Hubachek, Federal Defenders, on behalf of Mr. Cortez-Rivera. Your Honor, this case presents the latest iteration of the fact pattern of whether it's a destructive search at the border, the government declines to make any effort to demonstrate reasonable suspicion, offers no evidence that this type of search is essential to the sovereign's ability to protect itself, and then asks the District Court to rule based upon Flores-Montano and its progeny. But what we have here is a case that is outside the boundaries of this Court's previous cases. The closest case is the Hernandez case, which also involves the removal of one of the interior panels of the vehicle. But in that case, the removal was gentle, and the panel was capable of being placed back into the vehicle without any sort of diminution in the safety provided by the particular panel. Here, however, it's clear from the record that there was actually a destructive search, that the panel was, in fact, damaged, leaving exposed an area of the interior of the vehicle that was never intended by the manufacturer to be imposed, and no doubt caused a diminution in the safety of the vehicle in terms of its operation. In fact, currently, car companies market their vehicles as being more safe because they've got side airbags and whatnot. But now we have a situation where the padded portion of the interior panel of the vehicle is removed, making the safety less – offering less safety protection to the passengers, in this case, in the rear portion of the vehicle. But what do you do about the district court's finding that – the factual finding that the search did not affect the operation of the vehicle or the workings of the vehicle? Well, what I do with that, Your Honor, is that I'm assuming that the operation finding is going to be subject to the plain – the clear error standard, and this Court will adopt it based on that. But there is no finding as to safety. The way I read Judge Hayes' findings – But did you make the argument as to safety below? The argument wasn't specifically made – Wait. It wasn't specifically made. It wasn't made, period. And you were asked a couple of times, anything else you'd like to add? No, Your Honor. Our brief adequately sets forth the issues. I mean, on both sides. That's correct, Your Honor. Over and over, you're satisfied that the state of the record, then, will be defendants A, the stipulated facts. Is there anything else you'd like to raise? No, Your Honor. Defense, likewise. It wasn't me. I know it wasn't you, but you're standing in the shoes of the person who did this. It was Mr. Johnson. I mean, it wasn't raised. The argument that was raised was that this was a destructive search that violated the Fourth Amendment. That's what we're here to argue today, so I think that the argument was raised. But you are correct that there was never a specific statement that there's no finding as to safety. But really, I think that's the government's problem. Because the government bears the burden to demonstrate that this search complied with the Fourth Amendment. Well, that's an open question, too. That's really the issue in this case, isn't it? If it's the government's burden to show that it didn't interfere with safety, they didn't meet the burden. And if it's your burden, you didn't meet the burden. Okay. Is that better? Yes, I think so. So I'd like to address the burden issue. If this were a case that didn't involve destruction, then I think that there is an argument to be made that the burden should be on us because Flores-Montano is a case that doesn't involve destruction and said that that search was reasonable. But Flores-Montano doesn't control this case because it doesn't control destructive searches. So there's no presumption from Flores-Montano that the search here is reasonable. The Fourth Amendment tradition is that when the government exceeds the bounds, it needs to justify its own search. Now, we've cited Ninth Circuit cases that place the burden on the government to justify a search. But don't those cases involve situations where a warrant would otherwise be required? You cited several cases that have to do with homes and persons and not border searches. That's really the thrust of the government's response in their response brief. We understand the thrust. What's your answer to it? My answer is this, is that the fact that there's no warrant requirement here doesn't make any difference at all. Take a Terry stop, for instance. There's no requirement of a warrant to conduct a Terry stop. But we would all agree that the government bears the burden to demonstrate that a Terry stop is justified, even though there's no warrant requirement at all. This is the same situation. This stop, this search, is not presumptively viable under Flores-Montano. And because it's not, the government, as the party that chose to undertake the search, and for whatever reason chose to undertake it with destructive means, there's no explanation in the record as to why that had to be the case. But they're the party that thus bears the burden to demonstrate that that is a reasonable search under these facts. All right. But what about bearing the burden of showing that there's damage to the vehicle? I mean, ordinarily, when you study these things in law school, they talk about the burdens like this are ordinarily placed on the person best in a position to carry the burden. And because it's your client's car, I mean, doesn't it follow that your client or a defendant in these circumstances are in the best position to at least come forward on this part of the whole thing? Well. To show there's damage. I mean, how does the government know what condition the car was in before it actually pulled up to the stop compared to your client? Well, they certainly know what condition the car was in before they began to destroy it. And in this case, they knew what the condition was of the quarter panels. And really, I think that this is a case where the burden of production, no matter who bears it, is met because there's a stipulation here that there's damage to the car and there's a concession on the part of the government at page 73 of the excerpt of record that there would have had to have been some damage to the panel. The government would concede that. So to the extent that someone bears the burden of production to demonstrate that there's damage to this vehicle, it's been met. So when the damage to the vehicle is shown, that's your point at which the burden becomes the government's? Correct. It shifts at that point. It does, because Flores-Montano doesn't provide justification for destructive searches. So do you have to show that there's some damage that affects the operation or safety of the vehicle, or are you just saying you have to show some damage? I'm saying we just... I mean, Flores-Montano said, you know, talked about some kind of interference with the operation or safety. I don't think Flores-Montano set out that requirement. It did discuss... I want to answer the question first that George said. When does the burden shift? Is it when you show some damage to the vehicle, or do you have to show damage that interferes with safety and operation, which is the ultimate question, in which case it would mean you have the whole burden. If the defense has any burden at all, it's to show damage. Once you show damage, then it's outside of Flores-Montano, and it's up to the government to justify the search. Any nickel and dime damage? Yes, any... A scratch. I think so. You probably don't want a scratch. It shifts. Yes, I think so. There's not much of a problem if you show the scratch. Then the government just says the scratch is not... Big deal. Right. Right. It's like in the case of... But you would say, no, it's more than that. Once you show a scratch, the burden is to show reasonable suspicion. No, no, no. No, no. That's not your argument. I thought your argument is that then the burden of showing that there's interference with the operation and safety is the government's. Yes, that's my argument. In that case, the government has to show reasonable suspicion. If it doesn't interfere with the operation and safety, the government does not have to show reason. Right, and I think that's consistent with this Court's cases, the one where there's the drilling into the bed of the truck where it's only the size of a pencil. It's a burden that the government will routinely make in many cases. So I don't think that... Given the findings of this Court and the fact that your associate who did this case didn't argue safety, he found that whatever damage there was would not have affected the operation of the car. So he's made a finding regardless of whose burden of proof it was. See, I don't see that burden of proof is really the key issue. I mean, regardless of whose burden of proof it was, somebody made a finding that it didn't affect the operation of the car. So whoever's burden it was to prove that, they didn't come up with it. I think it's a two-part inquiry, though, because there's operational concerns and then there are safety concerns. He didn't argue safety below. Well, I understand that, but if it's the government's burden... Let me ask you, when the judge made the factual finding, was he influenced by where the burden was? There was no evidence offered either way, I assume. There was no evidence offered about safety and operation. So he found in the absence of evidence, there's no injury. Correct. If the burden were the other way, he would have had to find the other way. Right. The stipulation only dealt with the fact that there was damage. And the defense actually offered a photograph to illustrate the damage below. But that was the only additional piece of evidence that was offered. But what the bottom line is, is the judge here never made a finding as to safety, and I think safety concerns and operational concerns are separate. The engine could be completely intact, but if the airbag is disabled, that doesn't affect the ability to operate the car, but it does adversely affect the safety offered by the vehicle. Now, in your theory, let me make sure. Your theory is once you show damage, then the government must show both no interference with operability and no interference with safety in order to avoid the reasonable suspicion requirement. Correct. I think under... If they don't make that showing, then they must show reasonable suspicion. Correct. So if you were to prevail, would we remand and tell the district court to apply the proper burden? Well, I think if we were to prevail, then the court should enter a finding in our favor because the government had its chance to meet its burden, and it chose not to. It also chose not to demonstrate reasonable suspicion, even though it said at 45 of the excerpt of the record that it could do that. So I don't think they should get another bite of the apple. If we went on the burden of proof issue, the court should just reverse. Thank you. Thank you, Your Honor. Good morning, Mary. Please support Michael Crowley on behalf of the United States. Do you disagree on the burden of proof? Yes. The government's position is following, that in light of the decisions in Flores-Montano and Montoyo-Hernandez, the government is entitled to engage in certain destructive searches at the border. The burden on showing that the search affects safety or the operation of the vehicle rests on the defendant. And we would note that in the Flores-Montano decision at 154 to 155, the Supreme Court looked to the defendant to produce evidence that taking a part of the gas tank affected the safety or operation of the vehicle. So in the Supreme Court, the Supreme Court itself looks to the defendant. And we concur with the statements from the bench that the defendant's in the best position possible to make that kind of analysis. The defendant knows how his vehicle's operating. The defendant can state that it affected the safety or didn't affect the safety. And we would concur there are no Ninth Circuit cases, though we would note that in Chaudhry, again, in the decision, the decision focuses on what did Chaudhry present to show. Would you confine that rule to the border? Yes. Under the Ninth Circuit cases it stands now, the focus is on the border search. At the border, as noted in Cortez-Rocha, the United States is at the zenith of its ability to search vehicles. And given that, the burden should naturally rest on the defendant, which is the way the Supreme Court handled it in Flores-Montano. In Flores-Montano, they said the record made it clear it could not result in damage. Correct. And I believe in Flores-Montano they state that on page 155, respondent cites not a single accident involving the vehicle or motorist in the many thousands of gas tank disassemblies that have occurred at the border. So the Supreme Court is actually – Well, that's just a general statement validating this type of search of a gas tank. But that's not saying discussing the issue of who has the burden with respect to a particular destruction of property. Under the analysis set forth by the Supreme Court in the Ninth Circuit, the burden logically should rest with the defendant because, as noted by the bench, the government is entitled to engage in these searches without a warrant, without probable cause, without reasonable suspicion. The only time, potentially, when the requirement for reasonable suspicion may arise is if the search is overly destructive, even though what an overly destructive search is. Well, it's not overly, necessarily. I would suppose it's just destructive. Maybe there's a good reason for it. That's a more intrusive type of search. Let's assume it disables the car permanently. I mean, it's the nature of the intrusion normally that determines the extent of suspicion. Correct. That's why we don't believe that – So the question is, if there's a destructive search, more than what the court says it's okay to disassemble the gas tank, it's easy to put back together again, it's okay to do these things that don't really interfere. Of course, it might well be, and it seems likely, that if you do more serious damage to the car, you need a reason before you do it. That seems fairly reasonable. Correct, in that passage. Then the question is, well, what constitutes that kind of damage? We don't know yet what kind of destruction is necessary other than interferes with operability or safety. So, you know, in each case we're pushing the line about how much damage can you do to a car before you need a reason. And now we've gone farther than we have before, and it may be resolved by the question of when you're going to do damage to a car, whose burden is it to show that what you've done interferes with the car? And there's no real authority on that. I guess you look to the general principles of Fourth Amendment law, and it's not unusual in Fourth Amendment law to say that the government has the burden if it's going to interfere with your rights, basically. I believe this case would be somewhat different than that, because the idea is that we're entitled to do, the government would be entitled to do some destructive searches. It's these searches that are affecting operability and safety. So, in essence, what the defense is arguing is that is it an exception to the general authority and power of the government at the border, and therefore they should bear the burden of showing that, which we think is the analysis you see by the Supreme Court in Flores-McDonnell, that they're looking to the defendant in that case to present it. And we would also note in this case, and concur with the bench, that the judge actually did make findings. He made findings that there was no effect to the operation or workings of the vehicle. And I would note that in the initial... But that would depend on whose burden it was. They didn't show any. But if the burden was for you to show something, you'd probably come to a different result, because you'd say nothing tells us. Neither side tried to prove it. I would beg to differ somewhat with that, because the argument at the hearing was that it was an interior panel, that all it was was pried off. And at hearing, we argued that that didn't affect any of the operations of the vehicle. By just the general nature of it, that it's an interior panel of the vehicle. Now, I believe that the court agreed with that. And I would note that in the opening brief by the defendant, he stated on page 15 of his brief that the court had agreed that there was no safety... effect on the safety of the vehicle. You say the evidence was enough that you carried your burden just by introducing the evidence. I don't believe that we had a burden, but I believe... That's what I'm asking you. Are you saying that in this case, wherever the burden is, you would have carried the burden if it was yours? Yes. We take the position that looking at the kind of destruction in this case, it wasn't the destruction of a gas tank. It wasn't the destruction of a tire. It was the removal of an interior panel. There's some suggestion that a seat belt was damaged to the point where it wasn't operable. The problem that we run into with that is, number one, and this is a concept that came from the bench, the idea that that seat belt wasn't damaged before the panel was removed was something we could never explore at hearing. The concept came from the bench. It wasn't anything you thought of before? The concept came from the defense in its reply brief on the seat belt. It wasn't raised at the hearing. It wasn't raised in the opening brief. The first time that any allegation about a frayed seat belt came up is in the reply brief. I would note that if you look at the analysis and what we stipped to, we stipped that the moorings, the internal little plastic pieces of the panel, may have been cracked when it was removed. That's what we stipped to during the hearing. There was no allegation raised by the defense during the motion hearing that in any way the seat belt was involved. That is the issue that we're in somewhat of a quandary on why we filed our motion to strike that element of the argument because it deprives the government of responding to that. If they had at the hearing said, we believe that the seat belt was frayed pursuant to the search, then the government would have responded to that. But the statement made by the defendant that's on the excerpts of record, page 73, is that, quote, I think that the agreement is that this was a search that by prying on was destructive to the panel. Well, under Judge Reinhardt's proposed view of the burden of proof, the government should have come forward and shown that the seat belt was not frayed. If the burden had been on the government, then that may have been something that we would have been required to do. But the evidence here was the picture of the damage, right? The picture was of the vehicle at a subsequent point with the panels removed, which is what all the government agreed to, was that what the defendant was placing before the court was a picture of the vehicle at a later date with the panels removed. At no point did the government ever state that it was conceding or agreeing that there was any damage to the vehicle created by the search. Because, in essence, what the argument that flowed out of that was, was there had to have been, and I don't believe the defense challenges it, there had to have been some damage to the panel. And the government will concede that. There was some damage. As there was some damage to the tire, as there was some damage to the gas tanks and other cases. Let me ask you another question. We can affirm on any basis fairly presented in the record. Would the government object if we affirmed because we found reasonable suspicion? The government did not present reasonable suspicion at the hearing. We didn't argue that. That's right. That's correct. But do you think the government had reasonable suspicion? I don't want to overstep the bounds. We did not present on the record that there was reasonable suspicion for the search. So you would not want to be affirmed on that basis? I'd like to be affirmed. I just don't know if the record would support reasonable suspicion because we noted in front of the district court, and the district court was quite clear about it, that the government wasn't presenting reasonable suspicion. Yeah, the district court was kind of bewildered by the fact that you were not presenting reasonable suspicion. Well, maybe they didn't read our opinion, saying the government's trying to push the law as far as it can and avoiding presenting reasonable suspicion because it's trying to make law. A couple of opinions. The hearing would have been before those opinions by about a year. But it's the tactic that the opinions were talking about, which was engaged in before the opinions were written. A position taken by the government, correct, that no reasonable suspicion was required. They don't want to present the reasonable suspicion so that they can get decisions from the court saying you can destroy property and you can do all of this without reasonable suspicion. Well, the position taken by the government is that it has the authority to conduct the searches as it does. Therefore, it won't present the reasonable suspicion. In the case that was presented here, we did not present reasonable suspicion. That would be correct. But again, we believe, looking at Flores-Montano and the other cases, that the burden rests on the defendant to demonstrate either safety or operational impediments. If the panel has any other questions, I'd be happy to answer those. Thank you. We have about a minute left, I think. Thank you, Your Honor. Again, nothing in Flores-Montano justifies or gives the government leave to commit destructive searches. Well, how do we get at your seatbelt issue that comes up for the first time in the gray brief, in the reply brief? That argument was raised for the first time in the reply brief, but it's based upon a photograph that was actually admitted. But the record doesn't substantiate anything about the seatbelt, one way or another, in terms of safety or operability. I would agree that there was no argument and no explanation as to the state of the seatbelt. One second. Does the photograph show the damage to the seatbelt or the fact that the seatbelt wouldn't work? The photograph, in my view, depicts a frayed seatbelt, and it shows that the area where the seatbelt is moored is exposed. But I can't tell you from looking at this photograph how it got frayed. Could it have been frayed before? Could it have been frayed by the police? Who knows? That's correct. It could have been frayed by the police. Absolutely not developed, even though the court gave the lawyer two opportunities to add anything the lawyer wanted. Right, and they gave the same opportunity to counsel for the government. And again, in my view, they have the burden of proof, and so it was up to them to explain it. Another thing I'd like to point out about the search is that in terms of the ability of the defendant to come forward with evidence, the defendants don't get to see the searches. The stipulation in this case does reflect that Mr. Cortez was handcuffed and taken to a secondary inspection office. So there's no ability on the part of the defendant, actually, to view what's happening in the search and to convey that in court. So I think that also counsels in favor of placing the burden on the government. And then finally, with respect to the reasonable suspicion, the government did very clearly disavow it. They said they had something, and they never presented it. They declined to produce the dog discovery. So I think that argument on their part is waived, not forfeited, but waived. Thank you, counsel. Thank you, Your Honor. Case case argument will be submitted. Next case for argument is United States v. Murillo Betancourt. Thank you.
judges: Reinhardt, Trott, Wardlaw